IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **RUBEN A. STOUTH,** | ) | **CASE NO. 4:16 CV 3064** |
| | ) | |
| Petitioner, | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **WARDEN MERLAK,** | ) | |
| | ) | |
| Respondent. | ) | |

*Pro se* Petitioner Ruben A. Stouth filed the above-captioned Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. Stouth was convicted in 2015 in the District of New Jersey on one count of selling, distributing, or dispensing a controlled substance (heroin). He was originally incarcerated in USP Lewisburg and was accepted into the Residential Drug Abuse Program ("RDAP") at that facility. Stouth received a conduct charge for threatening another inmate in a group session of the RDAP, and was sanctioned with loss of good time credits, placement in disciplinary segregation for 30 days, and loss of privileges for 2 years. Stouth disputes the results of the disciplinary hearing, claiming the other inmate fabricated the incident. He is now incarcerated in FCI Elkton. He asks this Court to conduct an independent investigation into the incident at USP Lewisburg, and either vacate the decision of the Disciplinary Hearing Officer, or reduce his sanctions.

Petitioner also filed an Application to Proceed *In Forma Pauperis* (ECF No. 3). That Application is granted.

**Factual and Procedural Background**

On Thursday, January 21, 2016, Petitioner attended an RDAP community feedback session. When it was Petitioner's turn for feedback, Inmate Rojas took the microphone from Petitioner and gave it to Inmate Lugo-Perez, depriving Petitioner of an opportunity to speak. The following day, Friday, January 22, 2016, Petitioner "pull[ed] up" inmate Rojas for the microphone incident. (ECF No. 1-1 at Page ID#: 16). Petitioner does not explain what a "pull up" is, but from the context of the allegations, it appears to be a way of bringing a conflict between two inmates to the attention of the group in an attempt to resolve it amicably. On Monday, January 25, Inmate Lugo-Perez pulled Petitioner up regarding water left on the toilet seat. Petitioner believed the pull up to be in retaliation for his pull up of Rojas, who is a friend of Lugo-Perez. Petitioner told the group he would not accept the pull up and accused Lugo-Perez of lying to support Rojas. After the session, the Drug Treatment Staff took Petitioner aside and told him pull ups were part of the program and if he refused to accept another one, he would receive a modification for reprogramming. He indicates he was assured that the group was a safe environment in which to discuss conflict and no one would be sanctioned for participating in these discussions.

On Tuesday, January 26, 2016, Lugo-Perez pulled up Petitioner for allegedly threatening to kill Lugo-Perez and his family. The RDAP staff member, Dr. Ramirez, reported that Petitioner stated "I accept your pull up. I did threaten to harm you and kill your family." (ECF No. 1-1 at Page ID#: 10). A revision of the incident report indicates Petitioner added, "I shouldn't have done that...I am sorry." (ECF No. 1-1 at Page ID#: 11). Petitioner states he accepted the pull up but

claims he did not threaten to harm Lugo-Perez or his family. He contends that English is not his first language, and the way he pronounced the word "didn't" sounded like "did it." He denies apologizing for the action and claims he barely knew Lugo-Perez. Thirty minutes later, Petitioner was detained and taken to segregation for transport to another facility. He states Dr. Ramirez did not allow him to explain the situation prior to having him sent to segregation.

Petitioner lists several problems with his conduct report and his disciplinary hearing. He contends the date of the incident is listed as the date of the pull up, not the date in which the threat was allegedly made. He contends the reporting officer did not see the alleged threat take place. Petitioner submitted nine written statements from other inmates as well as his own verbal account of the incident. He indicates the Disciplinary Hearing Officer ("DHO") did not adequately evaluate the evidence as requested, did not question witnesses appropriately, misunderstood his statements, and did not follow procedures. He contends the inmate handbook provides the DHO with 5 work days to issue the conduct report. He states that the initial incident report was timely; however, the amended report issued on February 3, 2016 was beyond the time limitation. He also states that the inmate handbook gives the Unit Disciplinary Committee one day to issue the decision but they took five days to issue his decision. He maintains his innocence of the conduct in question, and indicates the sanctions imposed on him are harsh.

**Standard of Review**

Writs of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice*

*v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting Section 2241(c)). Because Petitioner is appearing *pro se*, the allegations in his Petition must be construed in his favor, and his pleadings are held to a less stringent standard than those prepared by counsel. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, this Court may dismiss the Petition at any time, or make any such disposition as law and justice require, if it determines the Petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *see also Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (holding district courts have a duty to "screen out" petitions lacking merit on their face under Section 2243).

**Analysis**

The Court's ability to review prison disciplinary proceedings is limited. District courts have no authority to review a disciplinary committee's resolution of factual disputes, or to make a redetermination of an inmate's innocence or guilt. *Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill*, 472 U.S. 445, 455 (1985). The only question for the Court to determine is whether the hearing complied with the basic requirements needed to satisfy due process. The standard is not a difficult one to meet. To comply with the requirements of the Due Process Clause, prison officials need only provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1972). Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. *Id*. at 569-70.

Furthermore, due process requires only that disciplinary findings resulting in the loss of good time credits be supported by "some evidence" in the record. *Superintendent, Massachusetts Correctional Institution at Wolpole*, 472 U.S. at 454-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* The DHO is not required to base findings on overwhelming or irrefutable proof of guilt. Even where the evidence is contradictory or partially exculpatory, a DHO may base a finding of guilt on only "some evidence" that indicates the prisoner is guilty. *Id*. at 457.

In this case, Petitioner attacks both the process and the result of the disciplinary hearing. To the extent he challenges the disciplinary process, he fails to allege sufficient facts to suggest he was denied due process. He was provided written notice of the charges more than 25 hours in advance of the hearing. He called witnesses and submitted numerous witness statements, and was provided with a lengthy written statement of the evidence upon which the Disciplinary Committee relied, an explanation of the reasons for giving some statements more evidentiary weight than others, and an explanation of the reasons for each of the sanction. Moreover, there is some evidence to support the finding of guilt. That is all that due process requires. To the extent Petitioner disputes the Disciplinary Committee's resolution, he fails to state a claim upon which relief may be granted. This Court cannot conduct an independent investigation or question the result of a prison disciplinary hearing. *Superintendent, Massachusetts Correctional Institution at Wolpole*, 472 U.S. at 455.

## Conclusion

Accordingly, Petitioner's Application to Proceed *In Forma Pauperis* (ECF No. 3) is granted, the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 is denied and this action is

dismissed pursuant to 28 U.S.C. § 2243. Further, the Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith.

    IT IS SO ORDERED.

                                                /s/Donald C. Nugent  
                                               DONALD C. NUGENT  
                                               UNITED STATES DISTRICT JUDGE

Dated: __March 13, 2017_____